# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF:<br><br>THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER 863-219-1985 | MJ 24- 38    -GF-JTJ |

### AFFIDAVIT IN SUPPORTOF
### AN APPLICATION FOR A SEARCH WARRANT

I, Justin Harken, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant and an order for a Pen Register and Trap and Trace Device as follows:

2. I make this affidavit in support of an application for search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A), for information about the location of the cellular telephone assigned call number 863-219-1985 (hereafter "the Target Number"), whose service provider is Verizon Wireless, a wireless telephone service provider headquartered at 180 Washington Valley Road, Bedminster, NJ 07921.  The Target Number is described herein and in Attachment A-1, and the location information to be seized is described herein and in Attachments B-1 and B-2.

1

3.      Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act.  *See* 18 U.S.C. §§ 3121-3127.  The requested warrant therefore includes all the information required to be included in an order pursuant to that statute.  *See* 18 U.S.C. § 3123(b)(1).  A certification by Assistant United States Attorney Paulette Stewart, an attorney for the government, that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by the Federal Bureau of Investigation, is included on the signature page of this affidavit.

4.      I am a Special Agent (SA) of the Federal Bureau of Investigation (FBI) and am currently assigned to the Havre Resident Agency in Great Falls, Montana, which is part of the Salt Lake City Division of the FBI.  I have been employed as a Special Agent with the FBI since January of 2020.  During my time as a Special Agent, I have participated in and directed numerous complex criminal investigations.  I have completed the qualified training for federal investigations in Quantico, Virginia.  Prior to being a Special Agent with the FBI, I was a police officer and detective for the Fargo Police Department in Fargo, North Dakota.  I am aware through my experience that investigating the communication patterns of

suspects provides significant evidence for how drug trafficking organizations operate and conduct their drug trafficking businesses as well as locating fugitives.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. Based on the information set forth in this affidavit, there is probable cause to believe that Joel Hadley has engaged in the possession with intent to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1), distribution of Fentanyl in violation of 21 U.S.C. § 841(a)(1) and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). There is also probable cause to believe that that the location information described in Attachment B will assist law enforcement in the apprehension of Joel Hadley.

7. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offenses being investigated. *See* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

8.      The United States, including the FBI, is conducting a criminal investigation of Joel Hadley regarding possible violations of 21 U.S.C. § 841 and 18 U.S.C. § 924.

9.      On April 4, 2024, a Federal Grand Jury indicted Hadley for possession with intent to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1), distribution of Fentanyl in violation of 21 U.S.C. § 841(a)(1) and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i) in case number CR-24-26-GF-BMM.  A subsequent arrest warrant for Hadley was issued on the same day in the District of Montana by U.S. Magistrate Judge John Johnston.

10.     By the time Hadley's arrest warrant was issued, Hadley was no longer in the Havre, Montana area as he had been kicked out Montana State University-Northern.  A database search showed Hadley's last known residence to be 640 Harding Ave, Lake Wales, Florida.  Hadley also had an address of 423 Alabama Street, Lake Wales, Florida.  On April 22, 2024, FBI Agents and Task Force Officers (TFO) began surveillance on these addresses.  At the time of this writing, Agents and TFOs have been unable to locate Hadley.

11.     On May 8, 2024, the agents and TFOs made contact with Hadley's father.  Agents informed Hadley's father that they had items to return to Hadley.

Hadley's father said he had not seen Hadley in two years nor did not have contact information for Hadley.  Hadley's father indicated that Hadley's brother may have contact information for Hadley.  Agents did not inform Hadley's father that Hadley had an active warrant for his arrest due to concern that Hadley would flee to avoid prosecution.  Agents left their contact information with Hadley's father prior to departure.

12. On May 8, 2024, approximately 30 to 45 minutes after the interaction with Hadley's father, FBI TFO Stephen Bonczyk was contacted by Hadley via telephone.  The number Hadley called from was the Target Number and Hadley identified it as his own.  Hadley informed Agents that he was not in Florida and only wanted to speak with Montana Agents.  Again, Hadley was not informed that there was an active warrant for his arrest.

13. On May 8, 2024, I called the Target Number to speak with Hadley.  The phone call went straight to voicemail.  I also sent Hadley a text message indicating he should call me.  At the time of this writing, Hadley has not contacted me.

14. On May 8, 2024, I determined through databases that 863-219-1985 is a Verizon Wireless serviced number registered to Joel Hadley.  I also determined that Hadley does not have any updated addresses listed, other than the addresses in Lake Wales, Florida.

15.     In my training and experience, I know that individuals commonly travel with and possess their cell phone throughout their daily activities. I also know that individuals commonly contact family, friends and associates and disclose their location. By obtaining location information and information collected by a "pen register" and/or "trap and trace" device, law enforcement officers may be able to locate and apprehend Hadley safely.

16.     Based on the information detailed above, I have probable cause to believe that Joel Hadley has engaged in the possession with intent to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1), distribution of Fentanyl in violation of 21 U.S.C. § 841(a)(1) and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). Furthermore, there is probable cause to believe Hadley is utilizing cell phone number 863-219-1985. There is also probable cause to believe that that the location information described in Attachment B will assist law enforcement in the apprehension of Hadley.

17.     In my training and experience, I have learned that Verizon Wireless is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also

known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records.  E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.  [Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.  Accordingly, cell-site data is typically less precise that E-911 Phase II data.

    18.    Based on my training and experience, I know that Verizon Wireless can collect E-911 Phase II data about the location of the Target Number, including by initiating a signal to determine the location of the Target Number on Verizon's network or with such other reference points as may be reasonably available.

    19.    Based on my training and experience, I know that Verizon Wireless can collect cell-site data about the Target Number.  Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the

communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as Verizon typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## AUTHORIZATION REQUEST

20. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

21. I further request that the requested Order/Search Warrant apply not only to telephone number 863-219-1985 (Verizon Wireless), but to any changed telephone number(s) subsequently assigned during the Order/Search Warrant period to the same International Mobile Subscriber Identity (IMSI), Mobile Subscriber Identification Number (MSID), Mobile Identification Number (MIN) and/or instrument bearing the same Electronic Serial Number (ESN), International Mobile Equipment Identity (IMEI), and/or Mobile Equipment Identifier (MEID); or any new IMSI, MSID, MIN, ESN, IMEI and/or MEID, whether the changes occur consecutively or simultaneously, listed to the same subscriber and wireless

telephone account number as the Target Number within the period authorized by the Order/Search Warrant; and/or any new IMSI, MSID, MIN, ESN, IMEI and/or MEID assigned to the Target Number or new/changed telephone number(s), whether the changes occur consecutively or simultaneously, listed to the same subscriber and wireless telephone account number as the Target Number within the period authorized by the Order/Search Warrant.

22. I further request that in the event the Target Number's unique telephone number, hardware or network identity number identified in the Order/Search Warrant as associated with the Target Number was changed by the subscriber/customer during the thirty (30) days prior to the execution of the Order/Search Warrant, the Service Provider be directed to provide the Investigative Agencies with that new unique telephone number, hardware or network identity number. Narcotics traffickers and other criminals are known to change telephone numbers or device identifiers, sometimes on a frequent basis, in a deliberate and calculated effort to avoid detection by law enforcement and despite law enforcement's due diligence in attempting to identify the current telephone number or unique device identifier of the Target Number at the time legal process is sought. Law enforcement's ability to learn the "new" telephone number or unique device identifier is essential to its ability to locate the fugitive. Law enforcement's knowledge of this "new" telephone number or unique device identifier would

allow law enforcement to obtain additional legal process to investigate the telephone number or unique device identifier further, to locate Hadley. Accordingly, I have offered specific and articulable facts showing there are reasonable grounds to believe that the identification of any telephone number or unique device identifier which, within the thirty (30) day period prior to the Order/Search Warrant's issuance, replaced the telephone number or unique device identifier associated with the Target Number for which probable cause of its association with the subject has already been established herein and pursuant to the Application/Affidavit, is also relevant and material to the ongoing criminal investigation and apprehension of Hadley.

23.   I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed.  There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705.  Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution.  *See* 18 U.S.C. § 3103a(b)(1).  As further specified in Attachment B-1, which is incorporated into

the warrant, the proposed search warrant does not authorize the seizure of any tangible property.  *See* 18 U.S.C. § 3103a(b)(2).  Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above.  See 18 U.S.C. § 3103a(b)(2).

24.     I further request that the Court direct Verizon Wireless to disclose to the government any information described in Attachment B-2 that is within the possession, custody, or control of Verizon Wireless.  I also request that the Court direct Verizon Wireless to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B-2 unobtrusively and with a minimum of interference with Verizon Wireless' services, including by initiating a signal to determine the location of the Target Cell Phone on Verizon Wireless' network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.  The government shall reasonably compensate

Verizon Wireless for reasonable expenses incurred in furnishing such facilities or assistance.

25. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

Respectfully submitted this _9th_ day of May, 2024.

_Justin Harken_
Justin Harken
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me by telephone on this _9th_ day of May, 2024.

_John Johnston_
HON. JOHN JOHNSTON
United States Magistrate Judge

**Attorney Certification Under 18 U.S.C. §§ 3121-3127**

To ensure technical compliance with 18 U.S.C. §§ 3121-3127, the warrant applied for herein will also function as a pen register order. I, Paulette Stewart, an attorney for the Government, certify that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by the Federal Bureau of Investigation. *See* 18 U.S.C. §§ 3122(b), 3123(b).

/s/ Paulette Stewart
Paulette Stewart
Assistant United States Attorney